**STATE**

v.

**Angel SUERO.**

No. 96–595–C.A.

Supreme Court of Rhode Island.

Nov. 6, 1998.

Andrea J. Mendes, Aaron L. Weisman, Providence, for plaintiff.

Paula Rosin, Providence, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

The defendant, Angel Suero (Suero), is appealing his convictions for first-degree child-molestation sexual assault, assault with a dangerous weapon, and kidnapping of a minor. The convictions were entered by the Superior Court pursuant to a jury verdict. Suero raises two issues on appeal. First, whether the trial justice erred in denying his motion for judgment of acquittal, and second, whether the trial justice erred in denying his motion to pass the case. After reviewing the parties' briefs and hearing their arguments, we discern no error. Consequently, we' affirm the judgments of conviction and deny Suero's appeal.

On the morning of November 16, 1993, at approximately 6:50 a.m., Amy (a fictitious name), the twelve-year-old victim in this case, was walking to her Providence school bus stop when she was approached by an automobile driven by Suero. Amy recognized Suero as an individual whom she had seen previously in front of her house. Suero positioned his vehicle alongside Amy and demanded that she join him. After Amy refused to "go inside the car," Suero exited the vehicle and proceeded on foot toward Amy. Suero then grabbed Amy by her hair, held her at knife point, and forced her into the passenger side of the vehicle. As soon as Amy was inside the automobile and under Suero's control, Suero drove to his Central Falls apartment via the highway, despite Amy's demand to be taken to school. Suero continued en route to his apartment, all the while refusing Amy's request and offering to take her to school only when he was "finished." Suero warned Amy, however, that if she screamed, he would kill her.

Following a terrifying journey during which Amy feared for her life, the two arrived at Suero's third-floor apartment in Central Falls. Upon arrival, Suero forced Amy into his apartment, locked the apartment door behind them, and led Amy to his bedroom. While in the bedroom, Suero offered Amy a glass of milk and played a pornographic video. Next, Suero forced Amy to remove her clothing, article by article, and lie naked on the bed. Suero then proceeded to perform sexual intercourse on Amy as she lay crying. Shortly thereafter, the two climbed off the bed. While Suero was dressing, Amy surreptitiously escaped from the apartment under the guise of using the bathroom.

Nearly two hours after the initial asportation Amy ran down the street to escape her attacker. There she encountered a bystander willing to help, who notified the local police department. Police soon arrested Suero, and he was charged with first-degree child-molestation sexual assault, two counts of assault with a dangerous weapon (one with a knife, the other a gun), and kidnapping of a minor.

A jury trial was held in the Superior Court. At the close of the state's case, Suero moved for a judgment of acquittal on all counts, which the trial justice denied. The jury returned a guilty verdict on all counts except for the charge of assault with a gun. Suero was sentenced to life imprisonment on the charge of first-degree child-molestation, and an additional twenty years to serve consecutively to the life sentence on the charges of assault with a dangerous weapon and kidnapping a minor. Suero then filed this appeal. Additional facts relevant to the specific issues addressed will be discussed as necessary.

### Motion for Judgment of Acquittal

■ In reviewing the denial of a motion for a judgment of acquittal, this Court applies the same standard as the trial justice.

*See State v. Henshaw,* 557 A.2d 1204, 1206 (R.I.1989). Accordingly, we "must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility and draw all reasonable inferences that are consistent with guilt." *Id.* Unless the evidence, when viewed in such a light, is insufficient to warrant a verdict of guilty beyond a reasonable doubt, the motion should be denied. *See id.* at 1206–07; *see also State v. Andrade,* 657 A.2d 538, 542 (R.I.1995). Mindful of this standard, we consider the following arguments.

Suero contends that he cannot be convicted of kidnapping a minor pursuant to G.L.1956 § 11–26–1.4 because his taking and transporting of Amy had no significance independent from that of the first-degree child-molestation sexual assault charge as required under *State v. Innis,* 433 A.2d 646 (R.I.1981). In other words, Suero maintains that in order to commit the child-molestation crime on Amy, it was necessary to take her to his Central Falls apartment. He insists the asportation of Amy was merely incidental to, and in furtherance of, the misconduct that led to the child-molestation charge and therefore, such conduct cannot support the separate charge of kidnapping a minor.

To support his argument, Suero relies on our holding in *Innis* where this Court stated that confinements that are incidental to the commission of a crime, and have no independent significance, are not punishable as separate offenses. *See id.* at 655. Suero's reliance on *Innis,* however, is misplaced because the holding of that case was limited to § 11–26–1.[1] Since Suero was convicted pursuant to § 11–26–1.4, our analysis in *Innis,* and the independent significance doctrine, is inapplicable to the issue before us.

■■■ "The intention of the Legislature controls our consideration of the mandatory or directory character of statutory provi-

sions." *Roadway Express, Inc. v. Rhode Island Commission for Human Rights,* 416 A.2d 673, 674 (R.I.1980). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meaning." *State v. DiCicco,* 707 A.2d 251, 253 (R.I.1998). Moreover, when we examine an unambiguous statute, "there is no room for statutory construction and we must apply the statute as written." *In re Denisewich,* 643 A.2d 1194, 1197 (R.I.1994).

Section 11–26–1.4 states:

"Whoever, without lawful authority, forceably or secretly confines or imprisons any child under the age of sixteen (16) years within this state against the child's will, or forceably carries or sends the child out of this state, or *forceably seizes or confines or inveigles or kidnaps the child* with intent either to cause the child to be secretly confined or imprisoned within this state against his or her will, or *with the intent of sexually assaulting or molesting the child as defined in chapter 37 of this title,* or with the intent to abuse the child as defined in chapter 9 of this title, shall be guilty of a felony and, upon conviction, shall be punished by imprisonment for life or for any term not less than ten (10) years, provided, however, that nothing herein contained shall be deemed to make the reasonable lawful acts of a parent in caring for his or her child a violation of this section." (Emphases added.)

■■■ By its plain and ordinary meaning, the present-day kidnapping of a minor statute is applicable to the charged conduct in this case, and expressly prohibits the unlawful confinement of "any child under the age of sixteen (16) years *** with the intent of sexually assaulting or molesting the child." Section 11–26–1.4. Unlike § 11–26–1, the

---

1. General Laws 1956 § 11–26–1 provides in pertinent part:

   "(a) Whoever, without lawful authority, forceably or secretly confines or imprisons another person within this state against his or her will, or forceably carries or sends another person out of this state, or forceably seizes or confines or inveigles or kidnaps another person with

   intent either to cause him or her to be secretly confined or imprisoned within this state against his or her will or to cause him or her to be sent out of this state against his or her will, shall be guilty of a felony and, upon conviction, shall be punished by imprisonment for not more than twenty (20) years."

kidnapping of a minor statute does not require that the act of confinement have "independent significance" from the act of child-molestation sexual assault, and in fact, expressly prohibits the confinement or seizure of a child under sixteen years of age "with the intent of sexually assaulting or molesting the child." Therefore, Suero's conduct, regardless of whether there was any independent significance, is clearly prohibited.

Further, there is ample evidence in the record to support the conclusion that the confinement of Amy was an independent act from that of the child-molestation, and thus would satisfy the *Innis* standard. In *State v. Lambert,* 463 A.2d 1333, 1340 (R.I.1983), this Court stated that if the confinement and the movement of the victim exceeded what was necessary to commit the underlying crime, then the kidnapping has independent significance. For instance, the victim in *Lambert* was accosted in the parking lot of the Marriott Hotel and forced into her own car by two armed men, one holding a screwdriver and the other an ice pick. For approximately forty-five minutes, the victim was driven to various locations in Providence, robbed, and sexually assaulted by the two defendants. On the basis of these facts, we held that there was sufficient evidence to support a separate conviction on the charge of kidnapping because the victim was driven to different locations and the asportation exceeded the movement necessary to commit the crimes of robbery and sexual assault. *Id.; see also State v. Taylor,* 562 A.2d 445, 457 (R.I.1989) (holding that abducting a child from her home and transporting her over two fences and alighting in front of a garage several houses away "was more confinement than necessary to perpetrate the sexual assault").

In this case, Suero held a knife to Amy and physically forced her into his vehicle. Suero then proceeded to drive from Providence to his apartment in the city of Central Falls, watch a lewd video, and then offer Amy a glass of milk. It was only after these events occurred that Suero sexually assaulted Amy. Clearly, these facts indicate that the abduction and confinement of Amy exceeded what was necessary for Suero to commit the child-molestation and thus had independent significance.

## Motion to Pass the Case

■ Suero's second issue on appeal concerns the trial justice's decision to deny his motion to pass the case. After the testimony of the state's second witness, Suero suddenly and unexpectedly rose to his feet and addressed the court. At this moment, the marshals responded by moving toward and standing behind Suero as ordered by the trial justice, "without making too big an issue out of it."

Following this incident, Suero's counsel moved to pass the case based on two theories. The first theory was that Suero's conduct before the jury was "totally inappropriate." The second theory was that the presence of the marshals as Suero addressed the court may have compromised the jury, which may have concluded that Suero was being held in custody. Notwithstanding these arguments, the trial justice denied Suero's motion to pass the case, finding that these actions were not so prejudicial as to warrant a mistrial. The trial justice did, however, issue a cautionary instruction that the jury disregard the outburst. Suero now appeals the denial of his motion to pass the case. We conclude, however, that the trial justice acted within his discretion, and that Suero suffered no prejudice.

■ It is well settled that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice. *See State v. Figueroa,* 673 A.2d 1084, 1091 (R.I.1996); *State v. Martellini,* 533 A.2d 527, 529 (R.I.1987). The determination of the trial justice in deciding to pass a case is accorded such great deference because "he or she possesses a 'front-row seat' at the trial and can best determine the effect of the improvident remarks upon the jury." *Figueroa,* 673 A.2d at 1091; *State v. Tempest,* 651 A.2d 1198, 1207 (R.I.1995). Therefore, the determination of the trial justice will be given great weight and will not be disturbed unless it is shown to be clearly wrong. *See Figueroa,* 673 A.2d at 1091.

The trial justice was able to observe first-hand what transpired in his courtroom with respect to this incident and in doing so held that neither Suero's outburst, nor the marshals' reaction, was so prejudicial that a mistrial was warranted. As a curative measure, the trial justice directed the marshals to stand behind Suero "without making too big an issue out of it," and directed the jury to disregard the outburst. Considering these facts, we hold that the trial justice did not abuse his discretion in denying Suero's motion to pass the case.

For the foregoing reasons, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed, and the papers in this case are remanded to the Superior Court.